IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01587-WYD-BNB

WEST RIDGE GROUP, L.L.C.; and
DOES 1-100,

    Plaintiffs,

v.

FIRST TRUST COMPANY OF ONAGA;
ROGER CROUCH;
MORRILL AND JANES BANK AND TRUST;
NEILL H. TAYLOR; and
ROES [DOES] 2-100,

    Defendants.

**ORDER**

I.    <u>INTRODUCTION</u>:

THIS MATTER is before the Court on Defendants Roger Crouch and Neill H. Taylor's Motion for Summary Judgment, filed April 18, 2008 [#105], the Motion for Summary Judgment filed by Defendants First Trust Company of Onaga ("FTCO") and Morrill and Janes Bank and Trust ("MJBT") (collectively the "Bank Defendants") on August 29, 2008 [#194], and Defendants Crouch and Taylor's Motion to Strike Affidavit of Joseph Cisler, filed September 12, 2008 [#197]. For the reasons set forth herein, Defendants Crouch and Taylor's Motion to Strike Affidavit of Joseph Cisler is granted. Defendants Crouch and Taylor's Motion for Summary Judgment is granted in part and denied in part. The Bank Defendants' Motion for Summary Judgment is granted.

II. BACKGROUND:

I first turn to a brief summary of the material facts in this case. As an initial matter, I find that while the parties vigorously dispute certain aspects of this case, the majority of material facts in this case are not in dispute. On December 23, 2004, Crouch and Taylor purchased from Head Acres, Inc. a Promissory Note dated June 22, 2000, with a face amount of $530,000.00 ("the Note"). Plaintiff, West Ridge Group, LLC ("West Ridge") is the maker of the Note. The Note is secured by a Deed of Trust also dated June 22, 2000, and recorded in the records of Delta County, Colorado ("Deed of Trust"). The collateral for the Note was a parcel of land of approximately 160 to 170 acres with then existing improvements and appurtenant water rights located in Delta County, Colorado (the "Delta County Parcel"). The Delta County Parcel is comprised of several separate parcels of land. While the Note does not assign a specific value to any of the separate parcels, it provides in relevant part that:

> Borrower may pay, in addition to the other required and scheduled payments, a pro-rata share of any outstanding indebtedness to obtain a corresponding pro-rata partial release of the aforesaid deed of trust, at any time.

In the Fall of 2006, West Ridge secured financing to complete construction of a hunting lodge located on a specific 40 to 43 acre parcel within the Delta County Parcel ("Parcel C"). According to West Ridge, the financing was contingent upon the lender taking first position on the deed of trust securing Parcel C. Therefore, Phillip Anselmo, a managing member of West Ridge and counsel for West Ridge in this case, advised Crouch and Taylor of West Ridge's intent to seek release of Parcel C in exchange for payment of $125,00.00. Crouch and Taylor refused, and elected to obtain an appraisal

of both Parcel C and the remaining acreage in the Delta County Parcel.  In December 2006, Crouch and Taylor's appraised value of Parcel C was approximately $4,000,000.00, while the remaining acreage was appraised at approximately $300,000.00.  Based on their appraised value of Parcel C, Crouch and Taylor determined that Parcel C represented 91.0995 percent of the total value of the Delta County Parcel security and, using this formula, they offered the release of Parcel C for 91 percent of the balance of the Note, or $476,795.53, plus legal and appraisal fees of $4,6161.67.  As of January 15, 2007, the balance due on the Note was $523,378.85.  West Ridge paid the amounts requested by Crouch and Taylor to obtain release of Parcel C in January, 2007.

West Ridge contends that the release provision in the Note does not entitle Crouch and Taylor to obtain an appraisal of Parcel C or assess appraisal and legal fees as part of the release.  West Ridge vigorously disputes the validity of the appraisal obtained by Crouch and Taylor's and characterizes their actions as an "illegal foreclosure."  According to West Ridge, because Parcel C represents approximately 1/4 of the total acreage of the Delta County Parcel, the release provision in the Note entitles him to obtain release of Parcel C for approximately 1/4 of the outstanding balance of the Note, or $125,000.  West Ridge asserts that Crouch and Taylor's actions were contrary to the express terms of the Note, resulted in a windfall, and forced West Ridge to obtain a second note with a higher interest rate.  West Ridge further asserts that the Bank Defendants exercised control and discretion over Crouch and Taylor's assets and investments and are liable under "respondeat superior, agency, and joint venture

theories." See Final Pretrial Order [#236], at 3.

Crouch and Taylor contend that the Note does not mention that a specific amount of acreage would be released in exchange for a certain partial payment of the Note. According to Crouch and Taylor, Parcel C is the most valuable parcel of the collateral due to its topography, water rights, and improvements, and allowing release of that parcel for $125,000 would leave them insufficiently secured. Crouch and Taylor assert that their method of comparing the appraised value of Parcel C in relation to the appraised value of the remainder of the Delta County Parcel was the appropriate and reasonable method to determine the "pro rata" value of Parcel C under the terms of the Note. They further note that West Ridge paid the full amount requested in January 2007, without reservation of rights or under protest.

The Bank Defendants claim there is no basis for any claim against them as neither of them had any direct involvement in the transaction at issue. According to the Bank Defendants, FTCO is merely the custodial trustee for the self-directed Individual Retirement Accounts held by Defendant Crouch and Defendant Taylor, and MJBT is a Kansas bank that has had no involvement with Defendant Crouch and Defendant Taylor other than having wire transferred funds for FTCO. In the Final Pretrial Order, the parties stipulate that before filing this action, West Ridge never communicated directly with the Bank Defendants. See Final Pretrial Order [#236], at 10.

III. STANDARD OF REVIEW

In his Complaint, West Ridge asserts eight separate claims against all Defendants for breach of contract, accounting, unjust enrichment, interference with

business relations, unfair trade practices, violation of the Real Estate Settlement Procedures Act ("RESPA"), negligence and punitive damages. Defendants seek summary judgment as to all of the claims asserted against them.

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). However, once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

IV. <u>ANALYSIS</u>

    A. <u>Motion to Strike Affidavit</u>

As an initial matter, I address Crouch and Taylor's Motion to Strike Affidavit of Joseph Cisler. The Cisler Affidavit is the only supporting document attached to West Ridge's Response to Crouch and Taylor's Motion for Summary Judgment. According to the Cisler Affidavit, Joseph Cisler "was present at the time of purchase of the property in this lawsuit and talked to Mr. Head, Mr. Head's realtor and others about the terms of the note and deed of trust." *See* Cisler Affidavit [#190-2]. While West Ridge does not cite to specific portions of the Cisler Affidavit in its Response, it states that both its response to Crouch and Taylor's statement of undisputed facts, and the statement of additional facts contained in its Response "are supported by Mr. Cisler's affidavit." Pls. Rsp. [#190] at 1.

Crouch and Taylor assert that portions of the Cisler Affidavit should be stricken

for failure to comply with Rule 56(e) as it contains inadmissible hearsay, generalized and argumentative statements, and refers to documents not properly attached or referenced. Fed. R. Civ. P. 56(e) provides that "[s]upporting and opposing affidavits must be made on personal knowledge, set out facts that would admissible in evidence, and show that the affiant is competent to testify on the matters stated."

A review of the Cisler Affidavit reveals numerous statements prefaced by the phrase "I am informed that . . . ," which are clearly not based on the affiants personal knowledge. Mr. Cisler admits as much in the first paragraph of the Cisler Affidavit when he states "I make this declaration upon personal knowledge *excepting for those matters averred upon information and belief and as to those matter [sic] I believe the same to be true."* See Cisler Affidavit, at 1 (emphasis added). In addition to numerous hearsay statements, the Cisler Affidavit is replete with conclusory statements regarding Crouch and Taylor's appraisal and another appraisal conducted by Farm Credit Services. However, neither appraisal is attached to the Cisler Affidavit. Much of the Cisler Affidavit refers to terms in the Note and Deed of Trust and Mr. Cisler's interpretation of the same; yet it is unclear whether Mr. Cisler actually reviewed the Note and Deed of Trust, as he states that he merely "talked" to Mr. Head and others about the terms contained in those documents.

I find that the following portions of the Cisler Affidavit contain inadmissible hearsay or other generalized and conclusory statements and must be stricken: paragraphs 4; 6; 11; 19; 21-26; 28; 30-31; 33-34; 36-39; 42-45; and 47-51. Therefore, the Motion to Strike Affidavit of Joseph Cisler is granted, and I will not consider the

aforementioned statements in deciding the Motions for Summary Judgment.

      B.    <u>Negligence Claim</u>

Next, I turn to Defendants' assertion that West Ridge's negligence claim must fail as it violates the economic loss rule, and because West Ridge cannot establish any elements of the claim. In connection with its negligence claim, West Ridge alleges that Defendants failed to perform "their duties" causing consequential damages in excess of $119,250.00, and states "[these consequential damages are also attributable to breach of contract above and reiterated here as if fully set out in the breach of contract action." *See* Complaint at ¶¶ 41-43.

In *Town of Alma v. Azco Construction, Inc*, 10 P. 3d 1256, 1259 (Colo. 2000), the Colorado Supreme Court held that a party suffering only economic loss resulting from breach of a contractual duty cannot assert a tort claim for such breach, absent an independent duty of care. Here, West Ridge's negligence claim is clearly based on the same facts underlying its breach of contract claim. Moreover, West Ridge has failed to identify any evidence that would give rise to an independent duty of care on the part of any of the Defendants in this case. As such, I find that West Ridge's negligence claim is barred by the economic loss rule, and all Defendants are entitled to summary judgment in their favor as to this claim.

      C.    <u>Violation of Statutes Claim</u>

I next address West Ridge's Fifth Claim for Relief for "violation of statutes." In the Complaint, West Ridge alleges that "defendants have violated both Federal and State Statute [sic], including the RESPA requirements and others," but does not identify

any specific violation of RESPA or any other statute.  *See* Complaint at ¶¶ 38-40.  Crouch and Taylor note that in its Motion to Remand, West Ridge acknowledged that the Complaint did not contain specific allegations regarding violations of RESPA, but stated that Defendants "may have violated several statutes and if discovery would so proves this supports a State negligence per se claim."  *See* Motion to Remand [#8], at 8.  According to Crouch and Taylor, this statement is an admission by West Ridge that its "violation of statutes" claim is a negligence claim which is also subject to dismissal based on the economic loss rule.  In addition, the Bank Defendants contend that RESPA does not apply to "credit transactions involving extensions of credit–(1) primarily for business, commercial, or agricultural purposes," and notes that the transaction at issue in this case was for commercial purposes, specifically, the construction of a lodge.  12 U.S.C. § 2606.  In response, West Ridge asserts that in the Order denying Plaintiff's Motion for Remand, the Court already determined that the RESPA allegations contained in the Complaint are sufficient.

In my Order denying West Ridge's Motion for Remand, dated October 31, 2007, [#63], I found that, on its face, West Ridge's claim entitled "Violation of Statute" asserts a federal cause of action under RESPA.  I by no means, addressed the merits of that claim.  At this phase in the litigation, West Ridge must articulate some specific statutory violation and come forward with some evidence to support its claim.  Because West Ridge has failed to do so, I find that summary judgment is appropriate in favor of all Defendants on West Ridge's claim for "violation of statutes."

D. <u>Punitive Damages Claim</u>

Next, Defendants content that, pursuant to Colorado Revised Statutes § 13-21-102(1.5)(a), West Ridge's claim for punitive damages must be dismissed because it was improperly pled in its Complaint. Section 13-21-102(1.5)(a) provides as follows:

> A claim for exemplary damages in an action governed by this section *may not be included in any initial claim for relief*. A claim for exemplary damages in an action governed by this section may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue. After the plaintiff establishes the existence of a triable issue of exemplary damages, the court may, in its discretion, allow additional discovery on the issue of exemplary damages as the court deems appropriate. (Emphasis added).

*See also Adams v. Corr. Corp. of Am.*, 187 P.3d 1190 (Colo. App. 2008) (affirming trial court's dismissal without prejudice of punitive damages claim where request for punitive damages in complaint was premature). A review of the record indicates that West Ridge has not followed the procedure set forth in C.R.S. § 13-21-102(1.5)(a). In response, West Ridge states that it is entitled to punitive damages in connection with its fraud claim and concludes "sufficient allegations support a finding of non-economic and punitive damages on this claim." Pls. Rsp. [#190] at 10; [#201] at 11-12. I find that West Ridge improperly included a claim for punitive damages in its Complaint, and has never sought amendment of the Complaint to properly include a request for punitive damages. Moreover, West Ridge has failed to establish the existence of a triable issue of fact with respect to exemplary damages. At this stage of the litigation West Ridge may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 317.

West Ridge has failed to meet its burden, and its punitive damages claim must be dismissed.

> E. <u>Unfair Trade Practices Claim</u>

I now turn to West Ridge's Fourth Claim for Relief for unfair trade practices pursuant to the Colorado Consumer Protection Act, C.R.S. § 6-2-101 *et seq.* ("CCPA"). The purpose of the CCPA is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory practices. C.R.S. § 6-2-102. It is a lengthy statutory scheme with many sections and subparts. In *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998), the Colorado Supreme Court articulated the five elements required to sustain a private cause of action under the CCPA:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*See also Martinez v. Lewis*, 969 P.2d 213, 221 (Colo. 1998).

Defendants generally assert that West Ridge has no evidence to support this claim, and the Bank Defendants note that West Ridge failed to identify any specific portion of the statute they allegedly violated. In addition, Crouch and Taylor contend that this case involves a promissory note and deed of trust between private parties. In response, West Ridge states that Defendants are in the business of making loans and holding notes and trust deeds. It is unclear which Defendants West Ridge is referring to, and West Ridge does not cite any evidence to support this assertion. In

-11-

any case, even assuming this statement were true, West Ridge makes no attempt to tie any alleged action or inaction by any of the Defendants to conduct prohibited by the CCPA. West Ridge has made no attempt, either in its Complaint or in response to the Motions for Summary Judgment, to articulate a "challenged practice." Moreover, even if West Ridge established the first two elements of its CCPA claim, it has failed to demonstrate any issue of fact as to whether the Defendants' actions significantly impact the public as actual or potential consumers of the defendants' goods, services, or property. As such, I find that summary judgment in favor of all Defendants is appropriate as to West Ridge's claim of unfair business practices.

F.     Interference With Business Relations Claim

I next address West Ridge's claim for interference with business relations. In its Complaint, West Ridge alleges that Defendants' practices and actions "have harmed and continue to harm the reputation, harmony, credit, business relations between [West Ridge] and other vendors, contractors, and suppliers." Complaint at ¶¶ 33-35. Colorado has adopted the tort of intentional interference with prospective business advantage, which is set forth in section 766B of the Restatement (Second) of Torts as follows:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

*Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1996) (en banc). "[T]he crucial

-12-

question in determining liability for tortious interference with prospective financial advantage is whether the defendant's interference was intentional and improper." *Cronk v. Intermountain Rural Electric Assoc.*, 765 P.2d 619, 623 (Colo. App. 1988). In other words, under Colorado law, one who intentionally and improperly interferes with the performance of a contract between the plaintiff and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for any resulting pecuniary loss. *See Westfield Development Co. v. Rifle Inv. Associates*, 786 P.2d 1112, 1117 (Colo. 1990).

Here, Defendants assert that there is no evidence to support this claim, and state that they had no dealings whatsoever with any of West Ridge's vendors, contractors, and suppliers. *See* Taylor Affidavit at ¶ 17. In response, West Ridge contends that Defendants need not have contact with any third party, and maintains that the law only requires a stream of causation that impacts third party relations. However, West Ridge has produced no evidence that Defendants intentionally or improperly interfered with West Ridge's contractual relationships, nor has it demonstrate how Defendants' alleged conduct has harmed its reputation. Once again, at this stage in the litigation West Ridge cannot rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Therefore, I

find that summary judgment in favor of all Defendants is appropriate as to this claim.

### G. Unjust Enrichment Claim

Turning to West Ridge's claim for unjust enrichment, in order to prevail West Ridge must demonstrate that: "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *DCB Construction Co., Inc. v. Central City Development Co.*, 965 P.2d 115, 119-20 (Colo. 1998) (en banc). A claim for unjust enrichment is "a . . . claim in quasi-contract for money damages based upon principles of restitution." *Id.* at 118. Unjust enrichment "is an equitable remedy and does not depend on any contract, oral or written." *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000) (en banc). "The theory does not require any promise or privity between the parties. . . [r]ather, it is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another." *Id.* However, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter. *Interbank Investments, LLC v. Eagle Rive Water & Sanitation Dist.*, 77 P.3d 814, 819 (Colo. App. 2003).

According to the allegations in the Complaint, "Defendants have been unjustly enriched by taking money from [West Ridge] disproportionate to the pro-rata clause, buying the note at a discount . . . and taking appraisal fees and other money from [West Ridge]." Complaint at ¶ 32. Similarly, in response to both Motions for Summary Judgment, West Ridge states that Defendants were unjustly enriched when they "took plaintiff's money," and "turned a 6.5% stated fixed rate interest loan with a 20 year term

into a two year payoff at over 14% interest by their accelerated foreclosure." Pls. Rsp. [#190] at 13.

Crouch and Taylor contend that the claim of unjust enrichment is not applicable to a contract case such as this. Defendants cite an Eighth Circuit case holding that the receipt of compensation which one is entitled to receive under a contract is not, by definition, unjust enrichment. *Planet Prods., Inc. v. Shank*, 119 F.3d 729, 733 (8th Cir. 1997). In addition, the Bank Defendants assert that West Ridge has no evidence that it conferred any benefit upon them. I find that all Defendants are entitled to summary judgment in their favor as to West Ridge's claim for unjust enrichment. First, West Ridge has not produced any evidence that it conferred any benefit on the Bank Defendants. To the extent West Ridge seeks to base the Bank Defendants' liability on a theory of respondeat superior, I reject that argument as set forth below. Second, West Ridge's claim for unjust enrichment is based on its contention that Crouch and Taylor misconstrued the release provision in the Note, and its apparent dissatisfaction with the terms upon which Crouch and Taylor initially purchased the Note from Head Acres. Because the Note is an express contract, and West Ridge's unjust enrichment claim is based on the same subject matter covered by the Note, West Ridge is precluded from seeking recovery based on unjust enrichment. *Interbank Investments*, *supra*.

H.  Breach of Contract Claim

Crouch and Taylor assert that West Ridge's Breach of Contract Claim is barred by the doctrine of waiver because West Ridge paid Crouch and Taylor the amounts

requested for release of Parcel C without any reservation of rights. West Ridge disputes this allegation and contends that it did object to Crouch and Taylor's demands for payment and sent "a half dozen letters of objection a couple of the more salient which are attached." *See* Pls. Rsp. [#190] at 12. In fact, there are no letters attached to West Ridge's Response to Crouch and Taylor's Motion for Summary Judgment. However, West Ridge does attach two letters dated November 17, 2006, and November 30, 3006, as exhibits to its Response to the Bank Defendant's Motion for Summary Judgment. In these letters West Ridge disputes Crouch and Taylor's demands as contrary to the terms of the Note and Deed of Trust. The issue of waiver is ordinarily a matter for factual determination. *Vessles Oil & Gas Co. v. Costal Refining & Marketing, Inc.*, 764 P.2d 391 (Colo. App. 1988). In this case, I cannot say that West Ridge's failure to include a reservation of rights with its payments for Parcel C constitutes waiver as a matter of law. Therefore, it would be inappropriate to enter summary judgment on this claim as asserted against Crouch and Taylor.

However, summary judgment in favor of the Bank Defendants is appropriate. It is black letter law that in order to recover on a claim for breach of contract, the plaintiff must first establish the existence of a contract. *See Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). West Ridge has failed to identify the existence of any contract between West Ridge and the Bank Defendants and, therefore, the Bank Defendants are entitled to summary judgment in their favor on West Ridge's Breach of Contract claim.

I also find that the Bank Defendants are entitled to summary judgment as to West

Ridge's accounting claim. To prevail on its accounting claim, a plaintiff must prove both "a demand for an accounting and a refusal to comply with the demand . . .." *American Woodmen's Life Ins. Co. v. Supreme Camp of American Woodmen*, 549 P.2d 423, 427 (Colo. App. 1976). In response to the Bank Defendants' Motion for Summary Judgment, West Ridge failed to identify either a demand for accounting or a refusal to comply. As previously stated, at the summary judgment phase, West Ridge can no longer rely on the allegations in the complaint. West Ridge has failed to demonstrate the existence of an essential element of its accounting claim and, therefore, the Bank Defendants are entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 322.

> I. <u>Respondeat Superior</u>

In response to the Bank Defendants' Motion for Summary Judgment, West Ridge asserts that the Bank Defendants' liability in this case is "as principals under respondeat superior." Pls. Rsp. [#201] at 5. However, West Ridge goes on to state that "[l]iability [of the Bank Defendants] is determined by considering, from a factual standpoint, whether the tortious act was done while the employee (here the banks), whether an agent or servant, was acting within the scop of employment." *Id*. (quoting *Dyer v. Johnson*, 757 P.2d 178, 180 (Colo. App. 1988). These two statements are inherently contradictory. "The doctrine of respondeat superior is based on the theory that the employee is the agent of the employer." *Daly v. Aspen Center for Women's Health, Inc.*, 134 P.3d 450, 452 (Colo. App. 2005). "Section 261 of the Restatement (Second) of Agency provides that '[a] principal who puts a servant or other agent in a position

which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.'" *See Grease Monkey Intern., Inc. v. Montoya*, 904 P.2d 468, 472 (Colo. 1995). The only way the Bank Defendants could be liable under a theory of respondeat superior is if they could be considered "principals" and Crouch and Taylor were their agents. I note that all of West Ridge's claims against Crouch and Taylor, except for its breach of contract claim, have been dismissed. In addition, there is simply no evidence that the Bank Defendants acted as "principals" with respect to Crouch and Taylor. In any case, as noted above, West Ridge appears to assert that the Bank Defendants are liable as "employees" of Crouch and Taylor. If the Bank Defendants are "employees," then Crouch and Taylor must be the "employers." West Ridge has not articulated any cognizable legal theory under which an 'employee' or 'agent' is responsible for the acts of the 'employer' or 'principal.' I find that West Ridge has failed to articulate any legal basis for any of its claims against the Bank Defendants in this case.

V. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant Roger Crouch and Neill H. Taylor's Motion for Summary Judgment, filed April 18, 2008 [#105] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. It is

FURTHER ORDERED that Plaintiff's Negligence claim, Real Estate Settlement Procedures Act claim, Punitive Damages claim, Unfair Trade Practice claim, Interference with Business Relations claim, and Unjust Enrichment claim against

Defendants Roger Crouch and Neill H. Taylor are **DISMISSED**. The only claim remaining with respect to Defendants Crouch and Taylor is Plaintiff's Breach of Contract claim. It is

FURTHER ORDERED that the Motion for Summary Judgment filed by Defendants First Trust Company of Onaga and Morrill and Janes Bank and Trust on August 29, 2008 [#194] is **GRANTED** and all the claims asserted against these Defendants are **DISMISSED WITH PREJUDICE**. It is

FURTHER ORDERED that Defendants Crouch and Taylor's Motion to Strike Affidavit of Joseph Cisler, filed September 12, 2008 [#197] is **GRANTED** as set forth herein.

Dated: March 10, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief U. S. District Judge