IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01587-WYD-BNB

WEST RIDGE GROUP, L.L.C.; and
DOES 1-100,

    Plaintiffs,

v.

FIRST TRUST COMPANY OF ONAGA;
ROGER CROUCH;
MORRILL AND JANES BANK AND TRUST;
NEILL H. TAYLOR; and
ROES [DOES] 2-100,

    Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came before the Court on a two-day bench trial held the week of June 29, 2009. Prior to trial, both parties submitted proposed findings of fact and conclusions of law. After considering the testimony of the witnesses, the credibility of the witnesses, the exhibits submitted, the arguments of counsel, and the parties' proposed findings of fact and conclusions of law, I now enter the following Findings of Fact and Conclusions of Law.

I.    FINDINGS OF FACT

    1.    On December 23, 2004, Defendants Roger Crouch and Neill H. Taylor purchased from Head Acres, Inc. a promissory note dated June 22, 2000, with a face amount of $530,000 (the "Note"). Plaintiff West Ridge Group, L.L.C. ("WRG") is the maker of the Note. At the time of the purchase, the outstanding balance on the Note

was $522,242.56.

2. The Note is secured by a Deed of Trust also dated June 22, 2000 and recorded in the records of Delta County, Colorado (the "Deed of Trust").

3. The collateral for the Note was a 160 acre (more or less) parcel of land with appurtenant water rights located in Delta County, Colorado (the "Delta County Parcel"). The Delta County Parcel is comprised of several separate parcels of land. The Note does not assign a specific value to any of the separate parcels. However, paragraph 7 of the Note provides in relevant part:

> 7. Borrower may pay, in addition to the other required and scheduled payments, a pro-rata share of any outstanding indebtedness to obtain a corresponding pro-rata partial release of the aforesaid deed of trust, at any time.

4. On November 14, 2006, WRG executed a Note and Loan Agreement with Farm Credit Services of the Mountain Plains, FLCA, a wholly owned subsidiary of Farm Credit Services of the Mountain Plains, ACA ("FCS") in the amount of of $2,000,000.00 with a variable interest rate at 8%. WRG intended to use the funds to finance construction of a partially completed lodge located on a specific 40 acre parcel within the Delta County Parcel (hereinafter "Parcel C").

5. The FCS Note and Loan Agreement required WRG to make two quarterly interest only payments by January 1, 2007. The remaining 120 principal and interest payments were to be paid in quarterly installments beginning July 1, 2007.

6. As collateral for the FCS Note and Loan Agreement, FCS demanded a 'first position' security interest in Parcel C, all of the water rights identified in the Deed of Trust, and an Easement Agreement dated November 10, 2006 between WRG and West

Elk Lodge L.L.C.

7. Clifford Pettis, an appraiser for FCS, testified that in November, 2006, he valued the land in Parcel C at $10,250.00 per acre, totaling $410,000.00 and the improvements (consisting of the partially completed lodge) at $2,200,000.00. Mr. Pettis estimated a total value for Parcel C at $2,700,000.00.

8. In correspondence dated November 16, 2006, and November 17, 2006, counsel for WRG made a written demand to Crouch and Taylor for release of Parcel C from the Deed of Trust, pursuant to the terms set forth in paragraph 7 of the Note. In the demand, WRG stated that it anticipated the payoff for release of Parcel C to be about $125,000. WRG interpreted paragraph 7 of the Note to mean it could request payoff of any portion of the Delta County Parcel and the pro-rata payoff amount should be based strictly on the number of acres requested. Because the acreage of Parcel C represented approximately one-quarter of the acreage of the entire Delta County Parcel, WRG calculated that it should pay one-quarter of the outstanding balance of the Note. During the trial, WRG referred its interpretation of paragraph 7 as a "dollars for acres" approach.

9. WRG requested release of a <u>specific portion</u> of the Delta County Property, Parcel C, as opposed to a partial release of one-quarter interest in entire 160 acres described in the Deed of Trust.

10. There is no mention in the Note or Deed of Trust that any <u>specific portion</u> of acreage would be released in exchange for partial payment of the Note.

11. Defendants Crouch and Taylor disagreed with WRG's interpretation of paragraph 7 of the Note. On November 21, 2006, Defendants responded to WRG's

demand stating that because WRG was requesting release of a specific parcel as well as 100% of the water rights identified in the Deed of Trust, Crouch and Taylor would first require a determination of the value of Parcel C and the appurtenant water rights. Crouch and Taylor requested a current appraisal of the entire Delta County Property, a current appraisal of Parcel C, a survey of the remaining parcels once the release had been recorded depicting and identifying all easements, and an analysis of the water rights.

12. As authority for this request, Crouch and Taylor relied on paragraph 9 of the Deed of Trust which provides in part that ". . . if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, with notice to Borrower if required by law, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest."

13. WRG did not provide the information Crouch and Taylor requested. WRG maintained that the Note and Deed of Trust did not give Crouch and Taylor the authority to request an apprisal and other surveys, or the authority to demand more than a "dollars to acres" payoff for the requested release. While the results of the FCS survey may have been relayed to Crouch and Taylor orally, there is no evidence in the record that WRG ever provided a copy of the FCS appraisal to Crouch and Taylor.

14. On December 5, 2006, Crouch and Taylor reiterated their request for appraisals of Parcel C and the remaining portions of the Delta County Property, and stated that if they did not obtain cooperation from WRG, Crouch and Taylor would obtain the necessary appraisals, and that all charges incurred, including legal fees,

would become additional indebtedness of WRG secured by the Deed of Trust.

15. Mr. Jeffrey L. Nelp, a loan officer with FCS and the primary loan officer on the FCS Note and Loan Agreement with WRG, testified that the terms of the FCS Note and Loan Agreement would only be kept open for six months. Mr. Nelp further testified that he suggested that all of the undisbursed construction funds be placed in escrow with First American Heritage Title Company pending the release of Parcel C.

16. In December 2006, Crouch and Taylor hired Colorado West Appraisals to complete appraisals of Parcel C and the remaining parcels in the Delta County Property. Parcel C was appraised at approximately $4,350,000.00, while the remainder of the Delta County Parcel was valued at approximately $425,000.00. Melissa Bizer, the appraiser for Colorado West Appraisals who completed the appraisal of the Delta County Property for Crouch and Taylor, testified that she was instructed to include the value of all water rights on the Delta County Property within the appraised value of Parcel C. Ms. Bizer further testified that she was instructed to do a full inspection of the partially completed lodge on Parcel C, and to perform only a site inspection of any buildings on the remaining parcels. Ms. Bizer further testified that she included the value of a 7-bedroom, 7-bathroom cabin in the appraised value of Parcel C.

17. Based upon the appraised value of $4,350,000.00 for Parcel C, and the release language in the Note, Crouch and Taylor determined that the appraised value of Parcel C represented 91.0995 percent of the total value of their security. They applied a value proportionate analysis whereby the release amount was determined by the appraised value of the acreage requested to be released. Using this formula, Crouch and Taylor offered to release Parcel C for $476,795.52 plus legal and appraisal fees of

$4,616.67.

18. On January 11, 2007, Defendant Taylor informed First American Heritage Title Company that Crouch and Taylor would release Parcel C for the foregoing amount. Sometime shortly thereafter, $481,412.19 was deducted from escrowed construction funds, and Crouch and Taylor released Parcel C.

19. Following the payoff and release of Parcel C, the balance of the Note was approximately $41,966.66.

20. Mr. Joseph Cisler, a ranch manager who resides on the Delta County Parcel and a former member of WRG, testified that Crouch and Taylor "stole" WGR's money from the escrow account. However, Mr. Cisler was not a party to the Note, he was not a member of WRG in 2006, he was not involved in the demand for release of Parcel C, and he was unable to explain why he believed Crouch and Taylor "stole" from WRG. I find that while WRG disagreed with Crouch and Taylor's position with respect to the amount required to release Parcel C under the terms of the Note, WRG continued to demand release of Parcel C and, at a minimum, acquiesced in the $481,412.19 payment to Crouch and Taylor.

II.   CONCLUSIONS OF LAW

1. WRG's sole remaining claim in this case is for breach of contract based on the parties' conflicting interpretations of paragraph 7 of the Note. The parties do not dispute that Colorado contract law applies.

2. "It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3)

failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff." *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992); Colo. Jury Instr. Civil 30: 1 (4th ed.).

3. The interpretation of a contract is a question of law. *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 517 (Colo. App. 2006). In construing paragraph 7 of the Note and the release provision contained therein, my primary obligation "is to effectuate the intent of the contracting parties according to the plain language and meaning of the contract." *Albright v. McDermond*, 14 P.3d 318, 322 (Colo. 2000). "The overriding rules of contract interpretation require a court to apply the plain meaning of the words used, subject to interpretation from the context and circumstances of the transaction." *Albright*, 14 P.3d at 222.

4. Whether a contract is ambiguous is also a question law. *Pub. Serv. Co. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333, 339 (Colo. 2006). A contract is ambiguous when it is reasonably susceptible of more than one meaning, however the "mere fact that the parties differ on their interpretations of an instrument does not of itself create an ambiguity." *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990).

5. Here, paragraph 7 of the Note, the provision that Crouch and Taylor allegedly breached, provides that WRG may pay "... a pro-rata share of any outstanding indebtedness to obtain a corresponding pro-rata partial release of the aforesaid deed of trust, at any time."

6. WRG identified a specific acreage (Parcel C) it wanted released as opposed to requesting a partial release of any 40 acres from the deed of trust.

7.     Utilizing the plan and ordinary meaning of paragraph 7, WRG's specific request for release of Parcel C was not covered by the terms of the Note.  Pursuant to the plain and ordinary meaning of the words used, the release provision provides that the amount of any release payment must have a corresponding relationship to the property requested to be released.  However, there is no provision in the Note or Deed of Trust that allows WRG to request release of any <u>specific portion</u> of acreage in exchange for partial payment of the Note, and the Note and Deed of Trust do not assign specific values to any of the acreage within the 160 acre tract.

8.     Because WRG's request for a specific release of a specific portion of the Delta County Property was not covered by the terms of the Note, Crouch and Taylor's actions were not in breach of the Note.

9.     Moreover, even if the I were to find that the release provision is ambiguous with respect to WRG's specific request for release of Parcel C, WRG failed to offer any extrinsic evidence to support its interpretation of the disputed paragraph 7.  No witnesses from either Head Acres, Inc., or WRG, the original makers of the Note, testified as to the intended meaning of the release provision in paragraph 7.  Mr. Cisler who testified on behalf of WRG was not a party to the Note and his understanding of the parties' intended meaning of paragraph 7 is based solely on hearsay.  Mr. Cisler has no personal knowledge concerning the intent of the drafters of the Note.

10.    Based upon the testimony and other evidence presented at trial, I find that the interpretation assigned by Crouch and Taylor to the release provision was reasonable under the circumstances.  The Note does not state whether the relationship between the release payment and the property released should be based on the

amount of acreage released or the value of the acreage released. Both parties presented evidence that Parcel C was the most valuable piece of the Delta County Property. Adopting WRG's interpretation of the release provision, referred to as a 'dollars for acres' approach, would allow WRG to demand specific release of the most valuable portion of Crouch and Taylor's collateral by paying an amount proportionate to the number of acres sought to be released without regard to the value of the specific parcel to be released. This interpretation of the release provision could potentially leave Crouch and Taylor under collateralized.

11. I note that during the trial, WRG raised several issues with the methodology used by Crouch and Taylor to appraise Parcel C and the remaining Delta County Property in December 2006. WRG presented evidence that the appraiser hired by Crouch and Taylor did a full walk-through inspection of the lodge on Parcel C and performed only a site inspection of the buildings on the remaining parcels. WRG also presented evidence that Crouch and Taylor's appraiser erroneously included the value of a 7-bedroom, 7-bathroom cabin within the appraisal for Parcel C when that property was situated on the remaining parcels. In addition, Crouch and Taylor's appraiser testified that she appraised the hunting lodge as though it were a residential property, rather than a commercial property. However, at the time the parties were negotiating the release of Parcel C, WRG never provided Crouch and Taylor with any alternative appraisal with which to value Parcel C or the remaining Delta County Property.

12. Ultimately, the interpretation of the release provision in the Note applied by Crouch and Taylor, which requires some relationship between the release payment and the relative value of the property to be released, is the more reasonable

interpretation. Based on the record before me, I find that Crouch and Taylor acted reasonably and in good faith in interpreting the release provision.

III. CONCLUSION

Based upon the foregoing, I find in favor of Defendants Roger Crouch and Neill H. Taylor on WRG's remaining claim for breach of contract. Accordingly, it is

ORDERED that the Clerk of Court shall enter judgment in favor of Defendants Roger Crouch and Neill H. Taylor and against the Plaintiff on the claim for breach of contract.

Dated: July 14, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge